# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

| | |
|---|---|
| ERIKA JACOBS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:25-cv-00701-RK |
| | ) |
| PRIME HEALTHCARE – BLUE | ) |
| SPRINGS LLC d/b/a ST. MARY'S | ) |
| MEDICAL CENTER, | ) |
| | |
| Defendant. | |

## ORDER

Before the Court is Defendant Prime Healthcare – Blue Springs LLC d/b/a St. Mary's Medical Center's motion to compel arbitration and dismiss the case or in the alternative stay the proceedings. (Doc. 28.) This motion is fully briefed. (Docs. 29, 35, 37, 40, 41.)[1] After careful consideration and for the reasons explained below, the Court **ORDERS** that Defendant's motion to compel arbitration is **GRANTED**, and this case is **STAYED** pending arbitration.

## Background

This case arises out of Plaintiff Erica Jacobs' prior employment with Defendant Prime Healthcare—Blue Springs LLC, d/b/a St. Mary's Medical Center.[2] Plaintiff asserts claims pursuant to Title VII of the Civil Rights Act of 1964 for employment discrimination based on her race and religion and for retaliation. (*See* Doc. 1-1.) Defendant argues that Plaintiff's claims are governed by a "Mutual Agreement to Arbitrate," which the parties entered at the start of Plaintiff's

---

[1] Defendant did not attach the arbitration agreements to its suggestions in support of the motion; it thereafter filed a Notice of Filing of Amended Exhibit 1, attaching the arbitration agreements. (Doc. 37.)

Plaintiff, without leave of the Court, filed a sur-reply to Defendant's motion, (Doc. 41), which Defendant moved to strike, (Doc. 43). Given Plaintiff's pro se status and the Court's decision herein, Defendant's motion to strike, (Doc. 43), is **DENIED**, and the Court considers Plaintiff's sur-reply.

[2] In her pro se complaint, Plaintiff named "Saint Mary's Medical Center" as the defendant. (Doc. 1-1 at 2.) In its motion to compel arbitration, Defendant indicates that the correct defendant is "Prime Healthcare – Blue Springs LLC d/b/a St. Mary's Medical Center." (*See* Doc. 28.)

employment with Defendant ("Arbitration Agreement"). (*See* Doc. 37-1 at 5-10 (electronically signed arbitration agreement); *Id.* at 11-15 (wet-signed arbitration agreement).)[3]

The Arbitration Agreement states in relevant parts:

In consideration of your agreement and that of the Company (collectively, the "Parties") to enter into this Mutual Agreement to Arbitrate ("Agreement"), the Parties hereby agree that, except as otherwise provided in this Agreement, any and all disputes, claims, or controversies, past, present, or future, between you and the Company arising out of your application and selection for employment, the employment relationship, and/or termination of employment, shall be resolved by individual, final and binding arbitration and not by way of court or jury trial. This Agreement includes any claims the Company may have against you, or you may have against the Company . . . .

Section 1: Definition of Company

The term "Company" shall mean Prime Healthcare Blue Springs, LLC and any of its parents, subsidiaries, d/b/a's, affiliated companies, or plans.

. . . .

Section 3: Mutual Duty to Arbitrate and Selection of Arbitrator

This Agreement applies to any covered dispute or claim that the Company, as defined above, may have against you or that you may have against the Company, and/or any of its: officers, directors, agents, employees, representatives, owners, or shareholders; clients and host facilities; staffing agencies and their clients; and all successors, assigns, or predecessors. . . . The Parties agree that this Agreement is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1, et seq ("FAA"), including, but not limited to, the FAA's substantive and procedural provisions, and FAA case law at the time this Agreement is enforced. . . .

Section 4: Claims Subject to Arbitration

. . . . "Claims" covered by this Agreement include, but are not limited to, claims for: wrongful termination; . . . discrimination or harassment, including but not limited to discrimination or harassment based on race, sex, pregnancy, religion, national origin, ancestry, age, marital status, physical disability, mental disability, medical condition, genetic characteristics, gender expression, gender identity, or sexual orientation, or any other legally protected characteristic under federal, state or local law; retaliation; violation of any federal, state or other governmental constitution, statute, ordinance or regulation, including but not limited to Title VII of the Civil Rights Act of 1964 . . . .

The arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, validity,

---

[3] Upon review, the two arbitration agreements are identical except for the date signed and the type of signature. The Court refers to both collectively as the "Arbitration Agreement" throughout for ease of reference.

scope, applicability, enforceability, or waiver of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable.

. . . .

BY SIGNING THIS AGREEMENT, EMPLOYEE ACKNOWLEDGES THAT EMPLOYEE CAREFULLY READ THIS AGREEMENT, UNDERSTANDS ITS TERMS, AND ENTERED INTO THIS AGREEMENT VOLUNTARILY AND NOT IN RELIANCE ON ANY PROMISES OR REPRESENTATIONS OTHER THAN THOSE WRITTEN IN THIS AGREEMENT. EMPLOYEE EXPRESSLY AGREES THAT EMPLOYEE WAS PROVIDED A REASONABLE OPPORTUNITY TO CONSIDER THE TERMS OF THE AGREEMENT, REVIEW THE JAMS RULES, AND/OR TO CONSULT WITH AN ATTORNEY OF EMPLOYEE'S CHOICE BEFORE SIGNING THE AGREEMENT. THIS AGREEMENT IS ENFORCEABLE FROM THE DATE EMPLOYEE SIGNS BELOW.

(Doc. 37-1 at 5-9 (emphasis in original).) Plaintiff signed the Arbitration Agreement electronically on January 24, 2025, and in person on January 29, 2025. (Doc. 37-1 at 10, 15.) Defendant moves to compel arbitration pursuant to the Arbitration Agreement and to dismiss the case, or in the alternative, stay the case pending arbitration.

**Legal Standard**

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-4, governs arbitration provisions in contracts involving interstate commerce. Federal law liberally favors arbitration. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). "The [FAA] limits a district court's initial role in any challenge to an arbitration agreement to (1) whether the agreement for arbitration was validly made and (2) whether the arbitration agreement applies to the dispute at hand . . . ." *Unison Co. v. Juhl Energy Dev., Inc.*, 789 F.3d 816, 818 (8th Cir. 2015) (internal quotation marks omitted; quotation modified). Further, "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). Ultimately, the party seeking to compel arbitration "bears the burden of proving that there was a valid and enforceable agreement." *Duncan v. Int'l Mkts. Live, Inc.*, 20 F.4th 400, 402 (8th Cir. 2021). "The party resisting arbitration bears the burden of showing either that the arbitration provision is invalid or that it does not encompass the claims at issue." *Triplet v. Menard, Inc.*, 42 F.4th 868, 870 (8th Cir. 2022).

3

**Discussion**

Defendant argues that this Court should compel arbitration and either dismiss or stay the case because the parties have entered a valid Arbitration Agreement and determinations on issues of arbitrability have been explicitly reserved for the arbitrator. Plaintiff argues that the Arbitration Agreement does not apply because "Defendant is in default judgment" and because Plaintiff allegedly requested arbitration on June 3, 2025, in the presence of Sherry McNary, "Human Resources Manager," and that Ms. McNary denied Plaintiff the right to arbitration.

As an initial matter, Plaintiff does not challenge the validity of the Arbitration Agreement itself and admits in her suggestions in opposition that she had to sign the Arbitration Agreement as part of her employment. Even if its validity were contested, the Court concludes that the Arbitration Agreement is a valid contract under Missouri law. "[W]hether an arbitration provision is valid is a matter of state contract law, and an arbitration provision may be invalidated by generally applicable contract defenses . . . ." *Torres v. Simpatico, Inc.*, 781 F.3d 963, 968 (8th Cir. 2015) (internal quotation marks omitted). A body of federal substantive arbitration law also applies. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006). Plaintiff's acceptance of the terms is shown by her signature. *See Baier v. Darden Rests.*, 420 S.W.3d 733, 738 (Mo. Ct. App. 2014). The Arbitration Agreement is also supported by consideration because the "plain language of the . . . contract" requires both Plaintiff and Defendant to arbitrate any claims against the other. *See State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798, 809 (Mo. 2015) (holding sufficient consideration for arbitration provision where both parties had to arbitrate claims). Thus, the arbitration agreement is valid.

As to Plaintiff's arguments that Defendant is in default and that Defendant waived the right to compel arbitration by denying Plaintiff's request for arbitration on June 3, 2025, the Court finds that the parties agreed that such issues of arbitrability are to be decided in the first instance by the arbitrator. (Doc. 37-1 at 6 ("The arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, validity, scope, applicability, enforceability, or waiver of this Agreement.").) "[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability.'" *Rent-A-Center*, 561 U.S. at 68-69. The Court need not determine whether the Arbitration Agreement applies to the dispute at hand, as the parties clearly agreed to arbitrate the gateway issue of arbitrability. *Rent-A-Center*, 561 U.S. at 80 ("[Q]uestions of arbitrability may go to the arbitrator . . . when the parties have demonstrated, clearly and

4

unmistakably, that it is their intent to do so."). Thus, the Court finds that a valid arbitration agreement applies in this case and Defendant is entitled to compel arbitration, including as to initial issues of arbitrability.

Regardless of the agreement that the arbitrator will address issues of arbitrability, the Court notes that Defendant is not in default and that Plaintiff has not obtained a default judgment in this case. The Court has twice denied Plaintiff's requests for entry of default against Defendant due to failure to comply with procedural rules, (Doc. 21), and apparent issues with service of process on Defendant, (Doc. 25). While Plaintiff has an additional motion for entry of default pending, (Doc. 34), Defendant has now appeared in the case and is actively defending the lawsuit. Plaintiff's claims also clearly fall within the scope of the Arbitration Agreement, which explicitly lists claims under Title VII.[4]

Defendant requests that the Court dismiss the case upon compelling arbitration because all claims between the parties in this case are subject to arbitration, citing *Green v. SuperShuttle International, Inc.*, 653 F.3d 766, 769-70 (8th Cir. 2011) (recognizing court has discretion to dismiss a case upon compelling arbitration "when all of the issues before the court are arbitrable"). In *Smith v. Spizzirri*, 601 U.S. 472 (2024), however, the Supreme Court "made plain that a court does not have the discretion to dismiss claims on the basis that they are subject to arbitration . . . ." *H&T Fair Hills, Ltd. v. Alliance Pipeline L.P.*, 154 F.4th 899, 901 (8th Cir. 2025); *see also Schlacks v. Chheda*, __ F.4th __, 2026 WL 1157563, at *2 (8th Cir. Apr. 29, 2026) (recognizing that *Smith* abrogated the Eighth Circuit's earlier opinion in *Green*). The Court therefore declines to dismiss the case, and the case will be stayed pending completion of arbitration proceedings.

[remainder of page intentionally left blank]

---

[4] The Court does not address Plaintiff's argument regarding Defendant's June 3, 2025, waiver of the right to compel arbitration, leaving this issue to be addressed by the arbitrator in the first instance. However, it appears Plaintiff did not follow the Arbitration Agreement's process for initiating arbitration.

5

**Conclusion**

Accordingly, after careful consideration and for the reasons explained above, the Court **ORDERS** that (1) Defendant's motion to compel arbitration, (Doc. 28), is **GRANTED**, and this case is **STAYED** pending arbitration, and (2) Plaintiff's motion for recusal, (Doc. 33), and motion for entry of default, (Doc. 34), are **DENIED as moot**. The Court **FURTHER ORDERS** that the parties (1) file a joint status update on or before August 5, 2026, and every 90 days thereafter while arbitration proceedings remain pending, and (2) file a joint status update within 7 days of final completion of the arbitration proceedings.

**IT IS SO ORDERED.**

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: May 12, 2026

6